**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Trever Frodsham, | No. CV-22-01074-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court are several matters, the most important of which, is the Court's pending order to show cause. The Court resolves the issues as follows:

**A. The Order to Show Cause**

As it pertains to the order to show cause, no party or non-party that incurred expenses as a result of the wrongfully entered default seeks any amount that they may have incurred as a result of setting the default aside. Therefore, no sanction shall be entered. *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 137 S.Ct. 1178, 1186 (2017).

At the hearing on the order to show cause on February 9, 2023, the Court further discussed with Plaintiff's counsel whether it should consider whether Plaintiff's counsels' conduct constituted an ethical breach and merited any sort of discipline, whether it should refer the matter to the State Bar of Arizona, or whether it should simply not take any action with respect thereto.

In his Motion to Set Aside Default (Doc. 47), Mr. Doyle asserted that pursuant to

A.R.S. § 29-104(c), AZPAC was no longer a registered limited liability partnership with the Arizona Secretary of State, thus, service on the Secretary of State was not sufficient to serve AZPAC. He further argued that Mr. Everroad was not the statutory agent for AZPAC at the time he was served for AZPAC. Thus, neither of the methods of service attempted by Plaintiff was sufficient to accomplish service. (Doc. 47 at 3-4.)[1]

In her response to the motion, Ms. Cadigan made no response to Mr. Doyle's argument that AZPAC was no longer a registered limited partnership under A.R.S. § 29-104(c). Nor did she argue that Mr. Everroad was actually the existing statutory agent for AZPAC. Since Plaintiff provided no argument sufficient to believe that it had accomplished service, the Court vacated the default. Further, in light of the additional information provided, it determined that there might be a basis for sanctions against Ms. Cadigan and/or Mr. Boren for their representation to the Court that Plaintiff had served AZPAC and require the reimbursement of any expenses resulting from the wrongful entry of default. Accordingly, it ordered Ms. Cadigan and Mr. Boren to show cause why such sanctions should not enter.

Ms. Cadigan and Mr. Boren engaged special counsel to represent them on the Order to Show Cause. Special Counsel filed affidavits from Mr. Doyle and Mr. Everroad prior to the hearing indicating that they sought no reimbursement for any costs incurred as a result of the entry of default. Thus, pursuant to *Goodyear,* no sanction was available or appropriate under the law. As it pertained to the question of compliance with the ethical rules, prior to hearing Special Counsel filed a brief on service to dissolved entities under Arizona law, arguing that because AZPAC was in fact appropriately served, there is no basis to sanction Mr. Boren for so stating.

---

[1] Mr. Doyle also avowed that AZPAC had dissolved as a partnership at the end of April 2020, and that, while AZPAC still had insurance coverage despite its dissolution, he had exhausted all of that coverage in settling a previous similar lawsuit brought by Ms. Cadigan against AZPAC, and that he had told her that at the time of that previous settlement. In his Motion to Set Aside, he further provided the text of his email exchange with Ms. Cadigan of July 14, 2022, wherein he told her that AZPAC was defunct and its insurance proceeds were exhausted.

**1. Analysis as to Assertions of Service**

In essence, in her briefing, Special Counsel argued that AZPAC, despite its long-dissolved status, should still be treated as a registered entity for purposes of allowing Plaintiff to accomplish service by serving the Secretary of State. (Doc. 100 at 6-7.) According to the argument, despite its earlier dissolution, AZPAC was still in its wind-up phase pursuant to A.R.S. § 29-1073(c), because so long as someone wants to serve a dissolved partnership with a claim allegedly resulting from the period of the partnership's existence, the partnership is still in the wind-up phase even if it no longer has assets against which any claimant could levy. (Id. at 7-11). Such potential claimants can serve the putative defendant by serving the Secretary of State pursuant to A.R.S. § 29-104(c) – and thus AZPAC must be deemed to remain registered for purposes of service despite its inactive status. (Id. at 12-13).

Special Counsel's brief does not firmly establish these propositions under the circumstances here. But the Special Counsel makes at least a plausible argument that the statutory term "registered" should not be read to preclude an inactive entity from being served through the Secretary of State, and, further, that such service might be the most practical method available under Arizona law by which claims against dissolved entities arising during their course of existence could be served upon them. Mr. Boren asserts to this Court that this was exactly the analysis he went through and the conclusion he reached before serving AZPAC through the Arizona Secretary of State. (Doc. 100-1 at ¶ 11); (Tr. of February 9, 2023 Oral Argument at 21-23). But, if Mr. Boren previously engaged in this analysis, it is a mystery why he did not set it forth as a response to Mr. Doyle's Motion to Set Aside (Doc. 47) which ultimately prevailed due to the lack of any such argument. *See, e.g.,* Doc. 74 at 4 (noting that Plaintiff made no assertion that AZPAC remained a registered limited liability partnership with the Secretary of State after its dissolution.)

Although Plaintiff did respond to Mr. Doyle's Motion to Set Aside, he cited to no Arizona statute or authority. Instead, he asserted that a California state court case, *Penasquitos Inc. v. Superior Ct.,* 53 Cal.3d 1180, 1186(1991), established a protocol for

service on dissolved corporations which provided authority for what Plaintiff had done to serve AZPAC in Arizona. But, as the Court has previously noted in granting the order to set aside, *Penasquitos,* does not establish any such protocol which could be adopted by Arizona or federal courts. Rather, it cites to a California statute that contains such protocols to establish the proposition that dissolved entities could remain liable post-dissolution for pre-dissolution conduct in California. The straightforward California statutory provisions mandating how to serve dissolved entities have no adjunct in Arizona. As the Court noted at the time, the issue was not whether AZPAC could continue to be liable despite its dissolution, it was whether AZPAC had actually ever been served.

In its Response to Mr. Doyle's argument to set aside, Plaintiff also argued that all of AZPAC's former constituent partners had already been served in this lawsuit. As the Court also noted at that time, however, that fact does nothing to accomplish service on AZPAC. Had Mr. Boren set forth the analysis on behalf of his client that he said he went through before attempting to serve AZPAC through the Secretary of State, it would have saved Mr. Boren, the parties and the Court, money, angst and considerable time. Nevertheless, Special Counsel's argument concerning this aspect of Arizona partnership law is sufficiently persuasive that, regardless of whether Mr. Boren arrived at that conclusion beforehand or after-the-fact, it provides a plausible objective basis for believing that AZPAC had been served. Mr. Boren's statement to the Court that AZPAC had been served through service on the Secretary of State thus provides no basis for sanctioning or disciplining Mr. Boren.

There is no similarly persuasive argument justifying Mr. Boren's representation to the Court that he had served AZPAC by service on Mr. Everroad. Nevertheless, whether he knew it or not Mr. Boren had an objective basis for concluding that AZPAC had been served by service through the Secretary of State. Further, Mr. Everroad agreed to meet the process server to be served, Mr. Everroad behaved professionally in doing what he could to ensure that a former partner of AZPAC became aware of this lawsuit, and he seeks no sanction against anyone to reimburse him for his time. In such circumstances no sanction

will be entered against Mr. Boren for stating to the Court that service had been achieved against AZPAC by service on Mr. Everroad.

### 2. Analysis as to July 14 Misstatements

At the hearing in this matter on February 9, 2023, the Court stated that it thought that a misstatement may have been made to it in conjunction with Plaintiff Counsels' request for extension that may well have violated the rules. The Court also stated however, that "I don't know that it's a particularly serious violation. I'm not really inclined to do a whole lot with it, although I think it's a violation." Nevertheless, after the presentation by their Special Counsel, Ms. Cadigan and Mr. Boren both addressed the Court's concerns with these miscommunications addressed in its Order to Show Cause.

As the Court had previously advised Ms. Cadigan and Mr. Boren, it was concerned about several apparent misrepresentations to the Court on July 14, 2022 arising out of the Motion for Extension on that date filed by Plaintiff. On that same morning, Ms. Cadigan held an e-mail exchange with Mr. Doyle concerning whether AZPAC continued to exist as an entity or whether there were assets of the Defendant, against which Plaintiff could recover. The exchange was begun at 9:25 AM by Ms. Cadigan and ended by a communication from Mr. Doyle less than an hour later at 10:20 AM. At 9:51, after an initial exchange between them, Ms. Cadigan asked Mr. Doyle whom she should serve to accomplish service on AZPAC and further expressed that she was certain that AZPAC had insurance available regardless and asked whom she should serve at the insurance entity. (Doc. 47-1)

Twenty-nine minutes later Mr. Doyle responded by affirming not only that he was not authorized to accept service on behalf of AZPAC, but that AZPAC was defunct and he knew of no one who could be appropriately served on its behalf. As it pertained to any available insurance Mr. Doyle also plainly stated "I was advised there is no coverage for this entity, the policy was exhausted with the prior settlement." This was in apparent reference to Mr. Doyle's earlier indication to Ms. Cadigan that a coverage analysis was being undertaken by the insurer. Doc. 100-1 at ¶ 8(a).

At the hearing on the 9th, Ms. Cadigan explained that in the middle of their exchange, after she asked Mr. Doyle at 9:51 AM about whom to serve at APZAC and/or the insurance company, she did not wait for a response. Instead, she drafted her affidavit saying she had received no response from her inquiries to Mr. Doyle, and she had no reason to believe that AZPAC was uninsured. She then left for Chicago before looking at Mr. Doyle's response to her at 10:20 AM. Six and a half hours later, Ms. Cadigan or her office filed her request which included her affidavit and motion and which represented both that Mr. Doyle had not responded to her, and that there was no reason to think that there was no insurance in this case.

When Ms. Cadigan got to Chicago, she looked at his response and acknowledged that she could have filed something correcting the misstatements, but she said, she felt she didn't need to.

> So, I flew out and I could have filed something saying I did get a response, but when I was back in Ohio and I looked at it, it basically said the same thing he's always been saying, Mr. Doyle, it was a defunct entity. I didn't know if that meant defunct insurance, defunct – it didn't seem to change our argument as far as finding potential coverage.

Tr. at 18.

As this Court has already indicated, Ms. Cadigan was under no obligation to accept Mr. Doyle's representation to her in that response at face value, and the Court would have given her more time to investigate the potential of insurance coverage even had she informed it of what Mr. Doyle had told her. Nor, as the Court had already indicated did it view the failure to make the correction as serious.

Nevertheless, in seeking to explain why she didn't make a correction in the February 9, 2023 hearing, Ms. Cadigan asserted to the Court that it was unclear that Mr. Doyle was responding to her inquiry about insurance. Yet, Mr. Doyle was quite clear when he told Ms. Cadigan in his email that "I was advised there is no coverage for this entity, the policy was exhausted with the prior settlement." There is not a question as to the text of the email — Mr. Doyle has provided the Court with a copy of the email in question. For Ms.

- 6 -

Cadigan to assert that Mr. Doyle's response was not clear as to insurance coverage may indulge in "truthiness" more than truth. Nevertheless, as previously stated the Court does not consider the misstatement as significant under the circumstances presented here, nor at this point, does it intend to further pursue this matter.

### B. Potential Dismissal of AZPAC

Because in the Response to the Order to Show Cause Plaintiff's counsel indicated that "[Ms.] Cadigan and Mr. Boren have since learned that AZPAC does not have available assets to satisfy any judgment," the Court presumes that AZPAC may now be dismissed as a party Defendant. As a result, it will dismiss AZPAC unless any party objects within 14 days of this Order.

### C. Reference to Magistrate Judge MacDonald

The Parties previously made a request that the Court refer the matter to Magistrate Judge Bruce MacDonald in Tucson for mediation. This is contrary to the Phoenix Division's local rule and practice. Thus, while the Court appreciates the skill of Magistrate Judge MacDonald, and the reason why the parties would make such a request, it declines to refer the matter specifically to Judge MacDonald. The Court will be happy to refer the matter for a mediation to a Magistrate Judge in Phoenix who is randomly selected.

**IT IS HEREBY ORDERED** that Defendant Arizona Partnership for Children shall be dismissed as a party to this action within 14 days of this Order unless any party objects.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to dismiss all claims against Defendant Arizona Partnership for Children only on **March 3, 2023** without further notice to the Plaintiff.

Dated this 17th day of February, 2023.

_____
G. Murray Snow
Chief United States District Judge